No. 2800

Second Circuit

———

PURVIS v. WARE CONSTRUCTION CO.

———

(November 6, 1926. Opinion and Decree.)

———

*(Syllabus by the Court.)*

1. **Louisiana Digest—Master and Servant —Par. 160 (j).**

The burden is on the plaintiff in a suit under the Employers' Liability Act to make out his suit.
App. 558.

2. **Louisiana Digest—Master and Servant— Par. 160 (l); Appeal—Par. 625.**

When issues of fact are decided by the trial court its findings will not be disturbed on appeal unless manifestly erroneous.
Indx, 3 La. App., vrbo "Appeal".

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. E. P. Mills, Judge.

Action by Edward R. Purvis against Ware Construction Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Long & McSween, of Shreveport, attorneys for plaintiff, appellant.

Browne, Browne, Porteous & Myers, of Shreveport, attorneys for defendant, appellee.

STATEMENT OF THE CASE

REYNOLDS, J. This is a siut to recover $20.00 per week for 400 weeks under the Workmen's Compensation Act for in-

juries alleged to have been sustained by plaintiff in an accident on November 27, 1925, while in the employ of the defendant.

The injuries are alleged to have been sustained while plaintiff and a co-laborer were engaged in pulling up from the ground a piece of timber 2x12 inches, approximately 18 feet long and weighing about 80 pounds, which piece of timber, it is alleged, while being so pulled up, slipped and jerked plaintiff, spraining his right arm, causing a right inguinal hernia, spraining and causing varicoule veins of the spermatic cord; and as a result of which injury, it is further alleged, the muscles, ligaments, cords, tissues, nerves, and other structures in and about plaintiff's right shoulder are deranged, torn, impaired and seriously affected, and the tissues, ligaments and nerves in and around the spermatic cord of the right side are inflamed, torn and bruised, causing varicoule veins of the said cord, the grip and use of plaintiff's right hand and arm are impaired and seriously affected, and that plaintiff's right side is ruptured, causing an inguinal hernia; and it is further alleged that by reason of the accident and injury plaintiff's eyes have become weakened to such an extent that he is unable to discern the different shades in the mixing of colors; that plaintiff is a painter by trade and that it is necessary that he be able to see the different shades in mixing colors; and that plaintiff is totally disabled from doing work of any reasonable kind.

Defendant denied liability and alleged that plaintiff did not sustain any serious or permanent injury during the course of his employment.

On these issues the case was tried and there was judgment rejecting plaintiff's demands and dismissing his suit, and he has appealed.

OPINION

The questions to be determined in this case is one of fact, whether, on the 27th day of November, 1925, plaintiff received the injuries complained of, or not.

Plaintiff depends, to establish the facts necessary to make out his case, on his own testimony and that of his co-laborer, E. W. Johnson, which, he says, corroborates his own evidence.

Plaintiff testified (Evidence, page 2):

"Q. Just state to the court what happened to you?
"A. Why I was detailed to scaffold for the painters—I was detailed by the foreman of the work out there to prepare a scaffold for the painters—for the rest of the painters to work on, and in preparing and arranging the scaffold for that work I was injured by a sudden jar; after working for about four days at an unusual kind of work, straining work, I received a jar or jerk that injured my whole right side practically.
"Q. Now how was this jerk or jar received, Mr. Purvis?.

"A. It was in handling 2x8 and 2x10—in other words, from sixteen to eighteen— fourteen to sixteen to eighteen feet long; but there is very few pieces of eighteen-foot for running boards. In pulling them up I was standing on a small narrow window ledge, the only footing I had, and my awkward assistant in swinging the board jerked it into the window sill and gave me a jar, throwing me off my feet."

W. E. Johnson, called as a witness by plaintiff, testified (Evidence, pages 51, 52, 53):

"Q. Mr. Johnson, were you working on this same work on the 27th day of November—the same time that Mr. Purvis was working there?
"A. Working on the same job.
"Q. Doing the same thing?
"A. Yes, sir, he and I were doing the scaffolding.
"Q. Doing the scaffolding. Did any accident happen to Mr. Purvis on that date?

"A. No accident happened, but he complained ——

"Q. (Interrupting.) Never mind what he complained about.

"A. No, no real accident happened, only at one time one of the boys dropped a board, and I think that it hit him on the head, though I didn't see that myself.

\* \* \* \*

"Q. Well, at the time that this supposed injury happened?

"A. He complained of a piece of board being dropped on him.

\* \* \* \*

"Q. Did you see the board fall?

"A. No, sir, I didn't.

"Q. This board that you are speaking of is the same board that somebody dropped on him and hit him on the head?

"A. Yes, sir.

"Q. And that is the only accident?

"Q. The only accident I know anything about.

"Q. Is that the accident that he complained about?

"A. That is the only one that I ever heard him complain about."

This evidence does not, in our opinion, corroborate the evidence of plaintiff, but, on the contrary, tends to destroy it.

The district judge, who saw and heard the witnesses testify, rejected plaintiff's demands. A careful reading of the evidence convinces us that his judgment is correct.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.