## BURK v. GULF REFINING CO. OF LOUISIANA.

### No. 5329.

Court of Appeal of Louisiana. Second Circuit.

Dec. 11, 1936.

Fred E. Greer and J. S. Atkinson, both of Shreveport, for appellant.

Harry V. Booth, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff sues for compensation alleged to be due him by defendant, his employer, because of an accident which he says befell him on August 2, 1935, while performing the duties of his employment. He alleges that the accident occurred in this manner: That at about the hour of 2:30 p. m., on said date, he transported by means of a two-wheel hand truck from some place on defendant's premises into its machine shop an iron shaft weighing about 500 pounds; that the truck's wheels rolled into a depression or hole in the concrete floor of the shop, causing it to career, with the result that the shaft slid over to its right, striking his right arm, and "suddenly

and forcefully throwing him to the floor, causing a severe jerk, strain and sprain to his back." He further alleges that immediately after the accident he retired to a rest room close by, where he remained for a brief period, and later in the afternoon returned to his home, but "was unable to return to work the next morning or at any time since"; that his employer was immediately notified of the accident; that the clerk of the machine shop where he was injured executed an accident report covering the facts of the accident, forwarded same to defendant's office and, upon the disclosures of this report, defendant recognized that the accident happened and injuries followed as related by him, and paid to him compensation at the rate of $20 per week until December 23, 1935. The injuries of which plaintiff complains, allegedly due to the accident, are declared in detail in the petition. He contends that these injuries totally and permanently disable him from performing manual labor.

Defendant denies that plaintiff suffered an accident while working for it, and therefore disclaims liability for payment of compensation to him. It admits that it made 19 payments of $20 each to him under the erroneous belief that he had had an accident as claimed by him, but, having learned that no such accident occurred, discontinued the payments. Payment of medical and doctors' bills, totaling $137.50, for plaintiff's account while laboring under the same error, is also admitted.

The trial judge gave judgment for plaintiff as by him prayed for. Defendant has prosecuted this appeal.

■ Plaintiff alleged and testified that he experienced the accident complained of in defendant's machine shop at about 2:30 p. m., August 2, 1935. There is no equivocation on his part as to this being the correct date. The record before us establishes beyond the peradventure of a doubt that no such accident occurred at said place or on said date. Having unqualifiedly planted his case on this date, he is bound by his allegations, and defendant was required only to defend on this basis. We are convinced, beyond this, that plaintiff suffered no accident in the month of August, 1935, while in defendant's employ. He did carry the 417-pound shaft by truck into the machine shop. He testified that a co-worker by the name of Thomas assisted him until within a few feet of the door, and that he alone pulled the truck by its handles until the

right wheel entered the depression, and jerked him down on his right knee; that he retired to the rest room for a few minutes and then returned home; that he undressed, with his wife's assistance, went to bed, and remained there for three days. He also testified that he called a co-worker, named Fish, for assistance as he went down, but that V. N. Cobb, the machinist, actually helped him to arise. He says Fish laughed at him as he arose. He also testified that he returned to his employment on the fourth day after the accident, but was unable to perform his regular duties, and for the next seven days, in his own words, he "stayed out of the way," by which he implies that he "hung around," did nothing, and drew pay. During all this time he did not report to his superiors that an accident had befallen him. He did not return to work after the end of the seven-day period because, as he says, he was unable to work, yet he did not then make known to any one of his co-workers that his disability was due to an accident. Fish and Cobb and a fellow workman, named Rice, positively contradict plaintiff's testimony about the accident. Fish says he saw him bending over slightly, but denies he was jerked to the floor. Cobb testified that plaintiff pulled the truck some eight or nine feet into the shop room and called for assistance to remove the shaft therefrom, and that he (Cobb) took hold of the shaft and held it erect as the truck was pulled away by plaintiff. Rice's testimony is practically the same as Cobb's. It seems passing strange that plaintiff would have left the truck and shaft so close to the door, as he says, without requesting some one to finish his task, in view of the fact that he was able to walk about and did, without assistance, promptly go to his home. Thomas testified that he assisted plaintiff to pull the truck until it was well within the shop, and no accident occurred. Fish and Cobb testified that plaintiff worked all August 2d and to noon (Saturday) of the 3d; that he returned to work and did work on the 5th, 6th, 7th, and 12th of that month. This testimony is corroborated by that of Capps, the shop foreman. Rice is positive he walked home with plaintiff at the noon hour on August 3d. Daily time cards made out and signed by plaintiff himself disclose that he was present and worked on all these days. He accepted and cashed defendant's check issued to pay him for this work. Capps, the foreman, says that plaintiff phoned him on the morning

of August 8th that he was "down" and could not work. He was absent the following three days, but appeared and worked on the 12th. He reported to Capps, the proper person on the 13th that he had the accident on the 2d. He told Capps then that Cobb and Fish had knowledge of the accident and would sign the report in corroboration of his version of it. They declined to stultify themselves in this manner, and the report was sent to defendant's office without the name of any witness to the accident. Capps says he made inquiry of each workman who was present on August 2d if he knew anything about or saw the accident, and all answered in the negative. The testimony is fairly conclusive that there was no depression or hole in the cement floor large enough for the truck's wheel to drop into.

The stubs attached to the 19 checks issued to plaintiff by defendant contain this typed statement: "Being advance on compensation due you for personal damages and loss of time resulting from injuries sustained August 2nd, 1935, while employed at our Shreveport Machine Shop."

The admission contained in these statements is urged by plaintiff as a bar to defendant's efforts now to escape liability for additional payments. It is well settled that such payments do not conclude the employer or its insurer. If made in error, as was done in this case, such fact may be shown in a proper proceeding. The Compensation Law is clear on the question, as well as the following decisions: Subdivision 5 of section 18, Act No. 20 of 1914, as amended by Act 85 of 1926; Fowler v. Louisiana Highway Commission (La.App.) 160 So. 813; Johnson v. Provencal Turpentine Company, 12 La.App. 78, 125 So. 321; Doby v. Canulette Shipbuilding Company (La.App.) 156 So. 51; Craig v. Standard Fruit & Steamship Company (La.App.) 168 So. 794.

In the Johnson Case, the court very correctly held, as reflected from the syllabus, that: "Payment of compensation to injured employee by employer before investigating accident held to have been made through error of fact, from which employer is relievable under Civ. Code, art. 1821."

In the present case defendant evidently did not carefully investigate the facts of the alleged accident. It is probable that, as plaintiff had been in its employ for many years and had rendered satisfactory services for the time, his own version of the accident was originally accepted without question at face value.

The learned trial judge, of whose services the bench will henceforth be deprived, entertained serious doubts of the sufficiency of plaintiff's case. In reasons for judgment, inter alia, he said:

"The evidence on the whole is very unsatisfactory because plaintiff relies chiefly on his own testimony, and the defendant relies chiefly on negative testimony, and the record is replete with insinuations that the plaintiff is a malingerer, and that he is falsifying as to the accident on the one hand, and that the defendant's witnesses have conspired to defeat him on the other. Through the maze of irreconcilable testimony, with equal interest on both sides in the outcome of the case, the Court must attempt to arrive at a just decision without a great deal of confidence in the correctness thereof, no matter which way it is decided.

"It would be easy for the Court simply to say that the plaintiff had not met the burden of proof under these circumstances and dismiss his demands; but in viewing the testimony as a whole, we do not feel justified in taking this easy method of escape."

While the strictness of the rules of evidence is materially relaxed and the forms of procedure simplified in compensation cases, yet the inexorable rule that a plaintiff must make out his case in such suits, as in other actions, remains unaffected. Plaintiff has failed to meet this rule. He is flatly contradicted on nearly all the material points of his case by witnesses whose credibility measures favorably with his own. His own testimony in many respects, unnecessary to mention here, is inconsistent and at variance with common human experiences. He alleges he was unable to return to work the morning after the accident or at any time since, yet he testified he did report for work on the fourth day following the alleged accident and remained on the job for seven days and drew pay therefor.

For the reasons herein assigned, the judgment appealed from is annulled, reversed, and set aside; plaintiff's demands are rejected and his suit dismissed, with costs.

DREW, J., concurs.