JANVIER, Judge.
In this suit for workmen’s compensation the principal defense is that the disability of the plaintiff is not the result of an accidental injury, but is merely the result of a physical condition from which he suffered before the accident and which, without traumatic aggravation, has gradually developed to such an extent as to produce total disability.
The District Judge, accepting this defense, .rendered written reasons for dismissing the suit. We find them so comprehensive and so fully justified by the record that we adopt them just as they were handed down by him. We now set them forth.
“Plaintiff seeks workmen’s compensation for permanent and total disability. The defense is that the plaintiff did not suffer an accident while in the course of his employment.
“It is clear that plaintiff at the present time is disabled from performing the common labor he was employed to do at the time of the alleged injury. The evidence discloses these facts:
“Plaintiff is a colored man, 32 years of age and apparently husky and virile; and was employed to load furniture on trucks. He claims that on June 15th, 1956, while assisting another workman to load a 130-lb. sofa on a truck, he suffered pain and was unable to continue ; that he reported the incident to his co-worker and to the supervisor of his department; and the latter instructed him to go to the Veterans’ Hospital. Both the co-worker and the supervisor denied any such incident or notice, and particularly was it denied that plaintiff was advised to go to the Veterans’ Hospital. Plaintiff did go to the Veterans’ Hospital, where he was hospitalized and underwent an operation when it was confirmed that he had arthritic tuberculosis of the sacroiliac joint in an advanced stage. The Veterans’ Hospital presented a bill for $4,500.00 for 255 weeks’ hospitalization.
"Plaintiff testified that he did not work after June 15th, but the time-clock and pay-checks disclose that he worked until July 13th. His immed *300 iate supervisor testified that when plaintiff worked he worked well, but was guilty of chronic absenteeism, sometimes not showing up for two or three days, and other times being sent home because he reported in an intoxicated condition.
“The medical testimony is unquestionably that the disease from which he suffers is a degenerative disease, and that it did pre-exist June 15th, 1956, by not less than six weeks and perhaps two years or more. The overwhelming medical testimony is to the effect that arthritic tuberculosis of this joint can be made to manifest itself by a simple act of sitting down, getting out of bed, and that violent traumatic action is not necessary to bring about its manifestation.
“Plaintiff has not been very frank in his testimony, and has been rather contradictory and nebulous. He first denied that he worked after June 15th, but the time-clock records and paychecks show that he worked as late as July 13th, almost a month after the alleged injury of June 15th, on which date he contends he suffered the disabling injury.
“The evidence convinces me that plaintiff does not know when he was injured, that is, when the arthritic tuberculosis first manifested itself. It certainly did not manifest itself on June 15th, because the testimony of his fellow-employees contradicts his testimony that he complained to the fellow-employee and reported to his superior. There could be no reason why the defendant’s agents would refuse to give him attention, or report it, because they were insured. Further, had he suffered the injury on that date, he would have been unable to work until July 13th.
“In addition to shifting the date when his dormant arthritic tuberculosis first manifested itself, and the date he ceased working, plaintiff’s credibility was further destroyed when he deliberately denied having applied for unemployment and veterans’ benefits, notwithstanding he had so applied. That he may mistakenly have applied for these benefits is not important; but it is important that he was willing to, and did, deny such facts.
“The law is clear that any injury sustained, or any previous injury that is aggravated, is compensable. Certainly, the incident did not create the disease, nor does the evidence warrant my finding that it aggravated it, since the plaintiff’s contention and testimony that he suffered this injury on June 15th has been destroyed by overwhelming defense testimony. The plaintiff himself does not know when this disease was first made manifest to him. There are only two conclusions, namely (1) that plaintiff did not prove he suffered any injury while employed; and (2) the alternative conclusion that he could have had the first manifestation while geting in or out of bed or taking any simple exercise at home.
“Under the circumstances, I am constrained to render judgment dismissing plaintiff’s suit, on the ground that he has not proved he suffered any disabling injury or any aggravation of a pre-existing injury or disease during the course of his employment.
 “It is required that before judgment can be rendered for plaintiff that he prove the grounds upon which he depends for recovery by a preponderance of the evidence. Conjecture, possibility and probability are not sufficient. Hogan v. Stovall Drilling Co., 55 So. (2d) 284 (La.App.1951); See, also, Wright v. Urania Lumber Company, 95 So. (2d) 838 (La.App.1957); Brown v. R. P. Farnsworth & Co., 17 So. (2d) 48 (Orl.App.1944); Mitchell v. Littlejohn, 10 So. *301 (2d) 651 (Orl.App.1942). Positive medical testimony, based on thorough examination, will be accepted over that of a tenuous nature. Richardson v. Tunica Hardwood Co., 81 So. (2d) 470 (La.App.1955).
“The plaintiff has the burden of proving his case. Piske v. Brooklyn Cooperage Co., 143 La. 455, 78 So. 734 (1918); Hogan v. Stovall Drilling Co., 55 So. (2d) 284 (La.App.1951); Weisgerber v. East Baton Rouge Parish School Bd., 81 So.(2d) 471 (La.App.1955); Brown v. R. P. Farnsworth & Co., 17 So.(2d) 48 (Orl.App.1944).”
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.