REID, Judge.
Plaintiff, Mrs. Agnes Lucille Snowden, has brought this, a Workmen’s Compensation suit, against Oak Manor Motor Hotel Company, Incorporated and their Workmen’s Compensation insurer, Home Indemnity Company seeking workmen’s compensation as a result of an incident which happened on May the 9th, 1963. Plaintiff, while in the performance of her employment on that day, was exposed to an insect spray and she alleges that as a result she contracted an occupational disease with various dermatology problems making her unfit to perform her work or follow her trade.
The defendant denied any occupational disease allegedly resulted from the incident and alternatively plead that compensation and medical bills had already been paid in excess of any actual disablement, which could be attributed to the spray incident.
The case was tried and the Judge of the Lower Court with written reaspns rendered a decision in favor of the plaintiff and against the defendant granting the plaintiff compensation at the rate of $35.00 per week for forty weeks less a credit of compensation payments paid to the plaintiff by the defendant of Three Hundred Fifty and 50/100 ($350.50) Dollars and further awarded judgment for the unpaid medical bills in the amount of One *289 Hundred Seventy-three and 13/100 ($173.-13) Dollars.
Plaintiff prays for total disability benefits of Thirty-Five and no/100 ($35.00) Dollars per week, of legal interest on each week’s compensation from date due until paid, for medical and hospital expenses allowed by law with interest and further prays that she be awarded attorney’s fees in the amount of Thirty-Five Hundred and no/100 ($3500.00) Dollars, together with the penalty of 12 per cent on all weekly compensation payments, which are now due. She claimed that the company by refusing to pay Workmen’s Compensation, following her injury, was arbitrary and capricious and she sought the penalties allowed by law for such action. From this judgment the defendant prosecutes this appeal. The plaintiff took no appeal nor did she file an answer to the appeal.
There is not much dispute about the facts in this case. Plaintiff was employed as a cashier at the Oak Manor Motel and was performing her duties as such on May the 9th, 1963 when another employee of the defendant motel came in the dining room and sprayed it with some kind of insect exterminator. Plaintiff claims that as a result of the exposure to this spray, she became afflicted with a skin rash, which caused her various dermatology problems and that she was unable to perform her work or follow her trade as a cashier. She alleges her injury had been diagnosed as erythematous dermatitis of the legs, arms and hands.
Plaintiff placed on the stand three doctors and three lay witnesses. The lay witnesses’ testimony was taken first and the defendant objected to their testimony on the grounds that there was no difference or disagreement by the doctors as to her condition. The Trial Court heard the evidence because the doctors’ testimony was not yet in evidence.
The first doctor that she went to was Dr. Joe C. Tilley, a specialist, being a dermatologist. Dr. Tilley testified that he first saw the plaintiff on May the 10th, 1963, which was the day after the incident. He treated plaintiff several months and he saw her for the last visit in March of 1964. He further testified that plaintiff had acute contact dermatitis with psoriasis. He further testified that Mrs. Snowden’s condition was acute but that the spray to which she said she was exposed possibly aggravated her condition but was not the cause of it. He testified that after a few days she should be able to return to work. That he saw her on June 19th, 1963 and informed her to return to her work. He saw her in August of 1963 and January, February and March of 1964. And on her last visit on March the 10th, 1964, he found that her trouble had completely cleared and gave her a final discharge and told her to return to work. He further found that during his treatment plaintiff had chronic vascular problems due to her weight and that the acute dermatitis condition had cleared but the plaintiff did have chronic psoriasis but that this would not interfere with her work.
Dr. Charles R. Chestnut, a general practitioner, testified that he saw the plaintiff some twenty-three times from April the 13th, 1964 until February the 5th, 1965. He found that the plaintiff had an infection of bacteria beneath the skin and her skin had been damaged by the repeated infections. He further testified that she was troubled with diabetes, gallstones, peptic ulcer and obesity and that plaintiff’s skin condition could be aggravated by the spray if she was allergic to that particular insecticide but that many people were exposed to it and did not suffer any harmful effects.
The next doctor, Dr. Owen P. McCutcheon, was a general practitioner and he saw plaintiff only once on May the 17th, 1964. He found that she had never been troubled with her skin before this incident. Dr. McCutcheon further testified that he found her condition as a chronic recurrent psoriasis and that it was his impression that this chronic psoriasis pre-ex-isted any incident which may have for a while aggravated it. He further testified *290 that this difficulty was of long duration and had periods of flaring up and coining back. Dr. McCutcheon in his statement, filed in the record, stated that the plaintiff had residual psoriasis at four small spots of the body and the left lower limb. She had a history of peptic ulcer and more recently of hypertension and obesity and he seriously doubted that, she had had no previous skin lesions of the dermatitis as the psoriasis is usually a chronic recurrent condition and even if cleared temporarily will occur again. He found no evidence of disability from the dermatitis, which she now had. This statement was dated May the 10th, 1964.
We might add that Dr. Tilley, the dermatologist, testified positively that in his opinion as an expert in this field, he did not feel that the chronic* psoriasis or skin condition that this lady had when she first presented herself to him on May the 10th was caused by the incident on May the 9th.
The three lay witnesses were Mrs. Wanda Abott, a neighbor of the plaintiff, a Mrs. Velma Hoover and Mrs. Gwendolyn Hines, who was the daughter of the plaintiff. They testified in substance that the plaintiff did not have any skin trouble before the spray episode in May, 1963, but that since that time she was always scratching and her legs itched and were swollen and she had red splotches on her legs and they would get scaly and this condition would come and go over her legs and thighs.
The Trial Judge in his written reasons found as follows, to-wit:
“There is very little, if any, material difference in the testimony of the medical experts. One. thing that all agreed on is that her condition did not seriously interfere with her returning to work. Dr. Tilley testified that evidence of her skin trouble was completely clear in March, 1964. Dr. Tilley instructed plaintiff to return to her work as early as June, 1963. There is very little, if any, conflict in the expert medical testimony and under our jurisprudence and rules of evidence where this situation exists, lay testimony that conflicts with undivided expert testimony is entitled to very little weight.”
With this finding by the Trial Court we are in thorough accord.
We believe the law applicable to this case is found in Picquet v. Toye Brothers Yellow Cab Company, La.App., 77 So.2d 569, wherein the Fourth Circuit found as follows, to-wit:
“But the situation here is different because the plaintiff here is not claiming compensation for the period of actual disability. That compensation has in fact been paid. He is claiming not that he is disabled, but that his susceptibility to dermatitis has been caused by occupational contact with the detergent, and we think that it has not been so caused. It resulted from a congenital condition of his skin and therefore cannot be said to have come about ‘as a result of the nature of the work performed’, as is required by the occupational disease amendment of the compensation law, LSA-R.S. 23:1031.1.”
The Lower Court found and was convinced that plaintiff was completely cured from the effects of this spraying incident by March the 10th, 1964, the date of Dr. Tilley’s last examination. He, therefore, awarded her compensation at the rate of Thirty Five and no/100 ($35.00) Dollars per week for a period of ten months or forty weeks plus interest at the legal rate from judicial demand until paid and costs, subject to a credit of Three Hundred Fifty and 50/100 ($350.50) Dollars compensation and further for the unpaid medical bills in the amount of One Hundred Seventy-three and 13/100 ($173.13) Dollars, with legal interest from judicial demand.
From our examination of the record, we can find no error in the ruling of the Lower Court and the judgment of same is hereby affirmed.
Affirmed.